UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ELIAZIN OCAMPO NOLASCO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00506-MPB-MJD |
| | ) | |
| BRISON SWEARINGEN Sheriff, Clay County Jail, *et al.*, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ORDERING PARTIES TO SUPPLEMENT THE RECORD**

Eliazin Ocampo Nolasco's petition for a writ of habeas corpus seeks his release from the Clay County Jail, where he is detained on behalf of the U.S. Department of Homeland Security (DHS). The parties dispute whether the Immigration and Nationality Act (INA) authorizes his continued detention as DHS appeals an immigration judge's dismissal of a removal case against him. In this order, the Court finds that Mr. Ocampo Nolasco's detention is authorized by the INA but orders the parties to expand the record and show cause why the Fifth Amendment does not entitle him to a bond hearing.

**I. Facts**

Mr. Ocampo Nolasco has been a lawful permanent resident (LPR) since 2002. Dkt. 14-1 at 10. He traveled outside the United States and returned through O'Hare Airport on May 6, 2026. *Id.* at 5. At customs, an inspector discovered that Mr. Ocampo Nolasco was convicted of a felony violation of Illinois's Counterfeit Trademark Act in 2013. *Id.* at 5, 10.

An immigration official determined that Mr. Ocampo Nolasco's conviction was for "a crime involving moral turpitude" and that he was therefore inadmissible under the INA. 8 U.S.C.

§ 1182(a)(2)(A)(i)(I); dkt. 14-1 at 5. The government placed Mr. Ocampo Nolasco in a removal proceeding under 8 U.S.C. § 1229a. *Id.* at 1.

Immigration Judge Eva Saltzman granted Mr. Ocampo Nolasco's motion to dismiss the removal case on July 15, 2026. *Id.* at 9–11. She reasoned that Mr. Ocampo Nolasco's conviction was not for a crime involving moral turpitude and that there was therefore no basis for removal:

> This statute criminalizes conduct relating to trademark use and counterfeit merchandise. These types of regulatory, or malum prohibitum, violations have long been distinguished from crimes which involve moral turpitude. [. . .] As the respondent has not been convicted of a crime involving moral turpitude, the sole charge of removability cannot be sustained and the motion to terminate is GRANTED.

*Id.* at 11.

DHS appealed Judge Saltzman's decision to the Board of Immigration Appeals (BIA). Dkts. 17, 19. The appeal remains pending with no timeline for a ruling. Mr. Ocampo Nolasco remains detained at the Clay County Jail.

**II. Analysis**

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Ocampo Nolasco argues that DHS lacks statutory authority to detain him. Dkt. 1 ¶¶ 26–28. The respondents answer that 8 U.S.C. § 1225(b)(2)(A) not only allows but requires that Mr. Ocampo Nolasco remain in detention for the pendency of the BIA appeal. The parties also dispute whether Mr. Ocampo Nolasco is protected against detention by the Fifth Amendment's due process clause.

In this order, the Court finds that § 1225(b)(2)(A) authorized Mr. Ocampo Nolasco's placement in detention and that it continues to apply during the pendency of the BIA appeal. The Court also considers the due process implications of Mr. Ocampo Nolasco's open-ended detention

pending appeal and directs the parties to supplement the record to show cause why he should not receive a bond hearing.

**A. Initial Application of § 1225(b)(2)(A)**

Although Mr. Ocampo Nolasco does not expressly argue that his detention was never authorized by § 1225(b)(2)(A), answering that question provides a helpful starting point for the broader statutory challenge.

"Ordinarily, a lawful permanent resident who arrives in the United States after a temporary absence does not have to apply for admission because he is regarded as already admitted." *Blanche v. Lau*, 146 S. Ct. 1981, 1985 (2026) (citing 8 U.S.C. § 1101(a)(13)(C)). However, a lawful permanent resident who arrives after a temporary absence and has committed a crime involving moral turpitude "may be regarded as seeking admission." *Id.* at 1988.

"[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under" 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) calls for a two-step process. First, an immigration officer determines that an applicant for admission who is seeking admission is not clearly and beyond a doubt admissible. Second, the immigration officer initiates a removal proceeding, during which the applicant for admission must be detained.

Whether Mr. Ocampo Nolasco's previous conviction is for a crime involving moral turpitude is not a question before this Court. It was properly raised in the removal proceeding and will now be resolved by the BIA. However, when the immigration officer who inspected Mr. Ocampo Nolasco at O'Hare *determined* that he was not clearly admissible due to his previous conviction, § 1225(b)(2)(A) dictated that he initiate a removal proceeding and place

Mr. Ocampo Nolasco in detention. Therefore, notwithstanding his LPR status, Mr. Ocampo Nolasco's initial placement in detention was consistent with the INA.

**B. Application of § 1225(b)(2)(A) During BIA Appeal**

The government does not invoke any detention authority beyond § 1225(b)(2)(A). Therefore, the dispositive statutory question is not whether § 1225(b)(2)(A) justified Mr. Ocampo Nolasco's placement in detention, but whether § 1225(b)(2)(A) continues to authorize his detention now that an immigration judge has deemed him admissible but DHS has appealed to the BIA.

The text of § 1225(b)(2)(A) does not answer this question directly. Rather:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained *for a proceeding under section 1229a* of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). By its text, § 1225(b)(2)(A) requires that an alien be detained through the conclusion of whatever proceeding is governed by 8 U.S.C. § 1229a.

Section 1229a directs that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). "*At the conclusion of the proceeding* the immigration judge shall decide whether an alien is removable from the United States." 8 U.S.C. § 1229a(c)(1)(A) (emphasis added).

The text of § 1229a does not *create* an administrative appeal process. That process is a creature of regulation. *See* 8 C.F.R. § 1003.1(b)(3) ("Appeals may be filed with the [BIA] from . . . Decisions of Immigration Judges in removal proceedings."). Even so, the text of § 1229a *accounts for* an administrative appeal process. Most notably, § 1229a(c)(5) directs the immigration judge to "inform the alien of the right to appeal" an order of removal.

The respondents assert that "[u]ntil there is a final decision, he remains in removal proceedings." Dkt. 14 at 7. While not directly supported by the text of § 1229a, this position is intuitive, particularly given § 1229a's references to administrative appeals.

The respondents support their position with citations to three recent district court decisions, but none reaches the conclusion that § 1225(b)(2)(A)'s direction to detain a noncitizen "for a proceeding under section 1229a" remains in effect after the immigration judge has dismissed the removal proceeding.

In *Patel v. Crowley*, the court *granted* a habeas petition, found that the petitioner's detention was authorized under 8 U.S.C. § 1226(a), and ordered that the respondents afford the petitioner with a bond hearing or release him from custody. *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025). There is no indication that the immigration judge issued an order by the time the habeas petition was resolved. *Patel* offers no guidance for resolving this case.

In *Herrera Nunez v. Mullin*, the court denied a habeas petition and deemed that the petitioner was properly detained under § 1225(b). No. 2:26-CV-651-JES-DNF, 2026 WL 1862086 (M.D. Fla. June 29, 2026). But the removal proceeding was still pending before the immigration judge. *Id.* at *3 ("[I]t would be premature to force the government in a pre-removal-hearing habeas petition to conclusively prove that Herrera Nunez was properly classified by border patrol agents as an applicant for admission."). *Herrera Nunez* provides no insight into whether § 1225(b)(2)(A) detention authority extends to a government-initiated BIA appeal.

Most recently, in *Caba Francisco v. Mullin*, the immigration judge issued a removal order. No. CV 26-12419-LTS, 2026 WL 2117320 (D. Mass. July 23, 2026). At the time the noncitizen's habeas petition was adjudicated, the petitioner had not yet appealed, and the deadline had not passed. The court denied the habeas petition and determined that the petitioner was lawfully

detained under § 1225(b)(2)(A), but that case is fundamentally different from this one, where the removal proceeding was dismissed.

The Court is ultimately persuaded by the logic of *Burashvili v. Ladwig,* No. 3:25-CV-01940 SEC P, 2026 WL 1697090 (W.D. La. June 11, 2026). In that case, the petitioner was ordered removed by an immigration judge, appealed to the BIA, and sought release from detention through a habeas petition while his BIA appeal continued. The court found that the petitioner's "proceeding under § 1229a [was] ongoing while his appeal of the removal order remain[ed] pending before the BIA." *Id. at* *3 (W.D. La. June 11, 2026). After a removal order becomes final, a noncitizen is subject again to mandatory detention under 8 U.S.C. § 1231(a)(1)(A). The *Burashvili* court reasoned that it would be illogical to interpret the INA as requiring the petitioner's detention *during* his removal proceeding (under § 1225) and *after* his removal order became administratively final (under § 1231) but also as eliminating any authority to detain him while he sought review of his removal order. *Burashvili*, 2026 WL 1697090, at *3.

The same reasoning carries some weight in this case. If the BIA remands Mr. Ocampo Nolasco's case, he will again be subject to mandatory detention under § 1225(b)(2)(A) during any further proceedings before the immigration judge. And, if he is ordered removed, he will be subject to mandatory detention under § 1231(a)(1)(A).

Neither statutory nor judicial authority directly answers the question whether § 1225(b)(2)(A) applies when the government appeals an immigration judge's dismissal of a § 1229a removal proceeding. *Burashvili* itself is not perfect fit factually. Left with a difficult decision, the Court is persuaded by § 1229a's multiple references to appeals and *Burashvili*'s deference to the possibility of mandatory redetention after the BIA rules. Section 1225(b)(2)(A) continues to authorize Mr. Ocampo Nolasco's detention.

**C. Due Process**

Mr. Ocampo Nolasco also argues that his continued mandatory detention violates the Fifth Amendment's guarantee that he may not be deprived of liberty without due process. The parties have given this argument slight attention compared to the statutory issue, but it is particularly salient given DHS's appeal and Mr. Ocampo Nolasco's prospect of facing months or years in detention despite the immigration judge's dismissal of the removal action.

In *Leonteva v. Noem*, another case in this District involving a § 1225 detainee facing indefinite detention during a government-initiated appeal, the Court directed the parties to expand the record and show cause why the Fifth Amendment did not entitle the petitioner to a bond hearing. No. 4:26-cv-00043-SEB-KMB, dkt. 10 (S.D. Ind. Mar. 13, 2026). This Court takes the same approach.

**1. *Zadvydas* and Due Process Protection Against Indefinite Detention**

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered the legality of indefinite post-removal order detention under § 1231(a). By its letter, *Zadvydas* does not constrain the government's § 1225(b) detention authority, but its reasoning applies as well to indefinite detention under § 1225(b) as it does to indefinite detention under § 1231(a).

*Zadvydas* is formally a case of statutory interpretation, but it began with a discussion of due process. "A statute permitting indefinite detention of an alien," the Court wrote, "would raise a serious constitutional problem." 533 U.S. at 690. Civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The government's interest in preventing flight does not justify indefinite detention if the detainee's removal is "a remote possibility." *Id.* And, the government's interest in protecting the community

only justifies indefinite detention if special circumstances—such as mental illness—create the danger to be protected against. *Id.* at 691. Therefore, "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, . . . the Constitution permits detention that is indefinite and potentially permanent." *Id.* at 696.

The *Zadvydas* court resolved its due process concerns by reasoning that Congress must not have intended to permit unlimited civil detention under § 1231 without affording some additional due process. *Id.* at 697–99. The Court instead interpreted the statute as implicitly authorizing detention only to the point when "removal is no longer reasonably foreseeable." *Id.* at 699.

**2. Applying *Zadvydas* to Mr. Ocampo Nolasco's Circumstances**

This Court cannot resolve this case by interpreting § 1225(b) "to avoid a serious constitutional threat." *Id.* In *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018), which the Court discusses more deeply below, the Supreme Court made clear that § 1225(b) can only be interpreted as requiring detention for the duration of the immigration proceeding. *Id.* at 301.

At the same time, the due process concerns animating *Zadvydas* apply every bit as strongly to this case. "A statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. Civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

Mr. Ocampo Nolasco's detention has become open-ended. He is a lawful permanent resident. He was detained and placed in a removal proceeding, which an immigration judge dismissed. DHS has appealed the decision. Despite his LPR status and the immigration judge's determination that he is not subject to removal, he has now been detained for more than three months, and he has just entered an appellate process with no timeline for resolution. The

immigration judge's dismissal of the removal case suggests that the likelihood of his removal is remote, and there is no obvious indication that he presents the type of danger to the community that would justify indefinite detention under *Zadvydas*'s framework. 533 U.S. at 690–91.

This Court is mindful that *Jennings* distinguished *Zadvydas*'s treatment of § 1231(a)(6) from §1225(b). 583 U.S. at 299. The Court characterized "the permissible length of detention under § 1231(a)(6)" as "unclear" but found that § 1225(b) "provide[s] for detention for a specified period of time"—namely, the time necessary to complete an asylum or removal proceeding. *Id.* However, the Court did not rule that the due process concerns central to *Zadvydas* are inapplicable to § 1225(b). The Court avoided constitutional analysis and ruled strictly that the statutory text of § 1225(b) calls for detention through the conclusion of asylum or removal proceedings. *Id.* at 312. And this case demonstrates that § 1225(b) allows for indefinite detention every bit as much as § 1231(a)(6).

Applying *Zadvydas*'s due process reasoning to this case does not necessarily mean that the government cannot continue to detain Mr. Ocampo Nolasco. Rather, it means Mr. Ocampo Nolasco may challenge his continued detention on due process grounds to ensure that his continued detention is justifiable. If Mr. Ocampo Nolasco is actually a flight risk or a danger to the community, the government could, for example, present evidence to that effect in a bond hearing, and an immigration judge could permit his continued detention.

For these reasons, this Court finds that the Fifth Amendment permits a challenge to continued detention under § 1225(b)(2)(A) under the facts of this case—where an immigration judge has dismissed the removal charge against the detainee and the government has extended detention indefinitely by appealing that decision.

### 3. Precedent for Applying *Zadvydas* to § 1225 Detention

In *Leonteva*, Judge Barker catalogued pages of decisions extending *Zadvydas*'s reasoning to permit challenges to indefinite, mandatory detention under § 1225. No. 4:26-cv-00043-SEB-KMB, dkt. 10, at *9–14 (collecting cases). Since *Leonteva*, a Fifth Circuit panel held in *Rodriguez v. Ortega*, 180 F.4th 702 (5th Cir. 2026), that aliens subject to mandatory detention under § 1225 may not be detained indefinitely without an individualized determination that detention is necessary. "Without a categorical justification for their detention, these aliens are entitled at some point to an individualized determination in the form of a bond hearing. The Fifth Amendment requires, at minimum, that there must be some reason for the Government to detain any person." *Id.* at 724.

*Rodriguez* is not binding on this Court, and the panel decision has been vacated pending a rehearing *en banc*. 181 F.4th 608 (5th Cir. 2026). As with *Leonteva* and the precedents cited in it, however, *Rodriguez*'s reasoning is persuasive. If indefinite, mandatory detention conflicts with the due process clause, then the detention the respondents propose here is constitutionally problematic.

### 4. Alignment With Other Precedents

This Court has found that the Fifth Amendment's due process clause affords Mr. Ocampo Nolasco a right to challenge his continued detention under 8 U.S.C. § 1225(b)(2)(A). Before proceeding to consider whether his continued confinement is unconstitutional, the Court pauses to clarify that this application of the Fifth Amendment does not conflict with prevailing Supreme Court decisions on immigration detention.

#### a. The Entry Fiction

Some Courts have determined that the Fifth Amendment provides no additional procedural protections to aliens who, like Mr. Ocampo Nolasco, are detained immediately upon arrival at a

port of entry and remain in custody during their asylum or removal proceedings. *See, e.g.*, *Acosta v. Arteta*, No. 1:25-CV-9916 (MKV), 2026 WL 263470, at *7 (S.D.N.Y. Feb. 2, 2026) ("This Court is bound by the Supreme Court's holding in *Mezei* that Congress defines the process due to an alien who has not been admitted into the United States."). The so-called "entry fiction"[1] holds that aliens who arrive at the U.S. border but are not admitted are protected by the Fifth Amendment, but they are entitled to no more process than what Congress has written into its statutes. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (For "an alien denied entry," due process is only "the procedure authorized by Congress." (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). It derives from the executive and judicial branches' "fundamental sovereign" authority "to expel or exclude aliens." *Id.* at 210. Because the "right to enter the United States depends on the congressional will," continued and even indefinite exclusion that complies with the letter of the statute does not deprive a detainee "of any statutory or constitutional right." *Id.* at 215–16.

In *Rodriguez*, the Fifth Circuit declined to apply the entry fiction, reasoning that it "ignores that those who have 'acquired any domicil or residence within the United States' are explicitly among those for whom decision-making by executive branch officials is not the limit of the process due them." 180 F.4th at 715 (quoting *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138 (2020)). Under this framework, the entry fiction does not limit Mr. Ocampo Nolasco's due process rights as a lawful permanent resident.

The *Zadvydas* Court also took pains to clarify from the outset that it considered the cases of "aliens who were admitted to the United States but subsequently ordered removed." 533 U.S. at

[1] *See, e.g.*, *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613, at *9 (N.D. Ill. Jan. 8, 2026) ("[T]he Supreme Court applies what is called an 'entry fiction.' Namely, despite the alien being present in the United States, he is 'treated for due process purposes as if stopped at the border.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 59 U.S. 103, 139 (2020)).

682. "Aliens who have not yet gained initial admission to this country would present a very different question." *Id.* To the extent *Zadvydas* attempted to limit its reach based on the entry fiction, this decision does not conflict with those efforts. As noted above, Mr. Ocampo Nolasco is not merely an arriving alien who has not yet gained initial admission to the country. He is a lawful permanent resident who was initially denied readmission and whose removal case has been dismissed by an immigration judge.

The Supreme Court applied the entry fiction more recently in *Thuraissigiam*, but in circumstances also inapplicable to this case. There, an immigration judge *denied* Thuraissigiam's asylum claim, and he brought a due-process challenge to that denial. *Id.* at 138. He did not challenge indefinite detention as a lawful permanent resident who received a favorable decision from the immigration judge.

**b. *Demore*'s Refusal to Extend *Zadvydas***

The respondents cite *Demore v. Kim*, 538 U.S. 510 (2003), in which the Supreme Court declined to extend *Zadvydas*'s protection against mandatory, indefinite detention to noncitizens detained under 8 U.S.C. § 1226(c). The Court reasoned that the government has robust authority to "constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Neither the facts nor the reasoning of *Demore* apply here. Mr. Ocampo Nolasco is not detained under § 1226(c), and he is not a deportable alien. Indeed, he is a lawful permanent resident, and an immigration judge very recently determined that he is not removable. Additionally, in *Rodriguez*, the Fifth Circuit interpreted *Demore* "as consistent with not permitting interminable detention of aliens either awaiting a decision on removal or in being removed." 180 F.4th at 727.

Therefore, this Court finds no conflict between *Demore* and the notion that Mr. Ocampo Nolasco has a due process right to challenge continued detention.

**5. Constitutionality of Mr. Ocampo Nolasco's Detention**

Having determined that Mr. Ocampo Nolasco is entitled to challenge his continued detention under the Fifth Amendment's due process clause, the Court must next determine whether his continued detention without further process would violate the Constitution.

In *Rodriguez*, the Fifth Circuit held that "the Government may detain aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing." 180 F.4th at 727–28. In *Leonteva*, the Court applied a multi-factor test to determine whether additional process was due. *Leonteva*, dkt. 10 at *17 (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019) ("When undertaking this analysis, 'most courts consider . . . (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.'").

Pursuant to the habeas rules, the Court orders the parties to expand the record.[2] Mr. Ocampo Nolasco will have **seven days** to file a supplemental brief on the question of whether he is entitled to additional process based on the six factors set out above. The respondents will then have **seven days** to respond. Each side must also supplement the record with any evidence supporting its arguments. The parties should address the issue under both *Rodriguez*'s 90-day rule and the multi-factor test applied in *Leonteva*.

[2] Rule 7, *Rules Governing § 2254 Cases* ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."); Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition" not brought under § 2254.).

**6. Remedy**

If the Court determines from the parties' supplements that the Fifth Amendment entitles Mr. Ocampo Nolasco to additional process to challenge his continued detention, the Court still must determine what process is necessary to satisfy the Constitution. Courts have collectively answered that an individualized bond hearing is the appropriate remedy. *See Rodriguez*, 180 F.4th at 724 ("Without a categorical justification for their detention, these aliens are entitled at some point to an individualized determination in the form of a bond hearing."); *Leonteva*, dkt. 10, at *18 (collecting cases).

Understandably, Mr. Ocampo Nolasco seeks immediate release. It is true that the "typical remedy" for unlawful detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). But any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). The violation in this case is not that the government never had authority to detain Mr. Ocampo Nolasco or even that it has no authority to detain him now. Rather, to the extent his rights have been violated, they have been violated because he is subjected to indefinite detention after the dismissal of his removal case with no individualized determination of the need for detention. A bond hearing offers Mr. Ocampo Nolasco an opportunity to demonstrate that his continued detention is not tied to a legitimate purpose and therefore addresses the concerns animating *Zadvydas*.

## III. Conclusion

Mr. Ocampo Nolasco will have **seven days** to file a supplemental brief on the question of whether he is entitled to additional process based on the six factors set out above. The respondents will then have **seven days** to respond. Each side must also supplement the record with any evidence

supporting its arguments. The parties should address the issue under both *Rodriguez*'s 90-day rule and the multi-factor test applied in *Leonteva*.

**IT IS SO ORDERED.**

Dated: August 18, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Michael Ibrahim
Ibrahim Law Office, LLC
michael@ibralaw.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov